UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| R.A.N.M. and her minor children, Y.D.M.N. and G.R.M.N., | § | |
| Petitioners, | § | |
| | § | |
| v. | § | CIVIL ACTION No. 7:20-CV-006 |
| | § | |
| WILLIAM P. BARR, *et al.* | § | |
| Respondents. | § | |

**GOVERNMENT'S RESPONSE TO PETITIONERS' MOTION
FOR A TEMPORARY RESTRAINING ORDER**

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ................................................................................ 4

STATEMENT OF FACTS AND STAGE OF PROCEEDING ..................................... 4

   I.    Factual Allegations / Undisputed Facts ............................................................... 4

   II.   Procedural History ................................................................................................. 6

EXHIBITS ...................................................................................................................... 7

STANDARD OF REVIEW .............................................................................................. 7

ARGUMENT AND AUTHORITY .................................................................................. 8

   I.    Applicable legal and regulatory framework. ....................................................... 8

       a.   Expedited Removal ........................................................................................ 8

       b.   Guatemala Asylum Cooperative Agreement .............................................. 10

   II.   Petitioners are not likely to prevail on the merits of their claims because the Court lacks jurisdiction over the Petition as it challenges the Government's decision to process Petitioners for expedited removal pursuant to the GACA. ......................................................... 13

       a.   This Court has no jurisdiction to review Petitioners' expedited removal orders. .......... 13

       b.   This Court has no jurisdiction to review the Government's decision to remove Petitioners to Guatemala pursuant to the GACA. ................................................................. 16

       c.   Notwithstanding the jurisdictional bars, Petitioners' claims regarding the denial of a right to counsel and right to pursue asylum are foreclosed by 8 U.S.C. § 1158(a)(2)(A), the GACA, and the implementing regulations. ........................................................................... 19

       d.   This Court has no authority to stay or otherwise enjoin the Government from removing Petitioners from the United States. .......................................................................... 21

       e.   This Court may not rely on the APA to restore the Court's subject matter jurisdiction over the Government's decision to process Petitioners for expedited removal and remove Petitioners to Guatemala pursuant to the GACA. ............................................................... 22

   III.   Petitioners' ongoing detention is lawful and this Court lacks jurisdiction to order their release ................................................................................................................................ 23

       a.   Petitioners' habeas corpus claim fails because their detention is lawful, and this Court lacks jurisdiction to order their release from custody ........................................................ 24

       b.   The Court lacks jurisdiction to grant release from detention under the APA. .............. 26

       c.   This Court lacks jurisdiction to review Petitioners' claims that the Government had violated the *Flores* Settlement Agreement. ......................................................................... 31

IV.     The Court lacks jurisdiction over Petitioners' Declaratory Judgment Act claim. ......... 33

V.     Petitioners fail to satisfy the other TRO factors................................................................... 34

a.     Petitioners have not demonstrated irreparable injury. ....................................................... 34

b.     Petitioners have not demonstrated potential harm to them outweighs the harm to the Government if a stay is not granted and have failed to show that granting the stay serves the public interest. .................................................................................................................... 37

CONCLUSION.................................................................................................................... 39

## SUMMARY OF THE ARGUMENT

1.  Petitioners are a family of three aliens (a mother and two children) from Honduras who were apprehended by U.S. Border Patrol ("USBP") soon after illegally entering the United States. Petitioners claimed a fear of returning to their country, were processed for expedited removal orders, and were determined to be removable to Guatemala consistent with the safe third country provision of the Immigration and Nationality Act ("INA") implemented through the U.S. Guatemala Asylum Cooperation Agreement ("GACA"). In their petition and corresponding motion for a temporary restraining order, Petitioners demand that they be released from USBP custody and seek to enjoin the Government from executing their removal to Guatemala. At this time, Petitioners are scheduled for a removal flight to Guatemala on January 21, 2020, and will not be removed from the United States until cleared for travel by a medical professional. [Ex. 8.]

2.  As outlined below, the motion for a TRO must be denied as this Court lacks jurisdiction to: (1) review Petitioners' expedited removal orders under the GACA; (2) stay/enjoin Petitioners' removal from the United States; or (3) order USBP to release Petitioners from custody. Furthermore, Petitioners have not demonstrated that any of the relevant factors weigh in favor of granting their request for injunctive relief.

## STATEMENT OF FACTS AND STAGE OF PROCEEDING

### I.    Factual Allegations / Undisputed Facts

3.  Petitioners allege the following facts in their petition and motion for a temporary restraining order, and/or said facts are not in dispute:

4.  Petitioners, a mother (RANM) and her two minor children (YDMN and GRMN), are from Honduras. [Dkt. 1-4 at 2.] On or about December 30, 2019, Petitioners entered the United States unlawfully without inspection. [Ex. 1.] Shortly after, a U.S. Border Patrol agent

apprehended Petitioners and transported them to the Rio Grande Valley Centralized Processing Center ("CPC") for processing. [Ex. 1 at 2.] During processing on January 1, 2019, Petitioners were determined to be inadmissible under Immigration and Nationality Act ("INA") § 212(a)(7)(i)(I),[1] and they were placed in expedited removal proceedings. [Ex. 2.] Petitioner RANM gave a statement in which she indicated, among other things, that she feared returning to Honduras. [Ex. 3.] Petitioner RANM was also given written notice of her right to contact her consulate, which she declined. [Exs. 4, 5.]

5. U.S. Border Patrol also determined that Petitioners were amenable to possible removal under the GACA and they were given a GACA initial processing information sheet. [Ex. 5.] On January 2, 2020, consistent with 8 C.F.R. § 208.30(e)(7), Petitioners were interviewed by a U.S. Citizenship and Immigration Services ("USCIS") asylum officer ("AO") for a GACA "threshold screening." [Ex. 6.] During the screening, the AO read a prompt explaining, among other things, that the purpose of the interview was "to determine whether [Petitioners] will be removed to Guatemala, pursuant to [GACA], for consideration of [their] asylum or other protection claim under the laws of Guatemala" or whether Petitioners "qualify for an exception to the Agreement or otherwise should be permitted to apply for asylum in the United States." [*Id.* at 2.] The GACA initial processing information sheet was also read to Petitioner RANM in Spanish. [*Id.* at 2.]

---

[1]   INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), states in its entirety

**(7) Documentation requirements**
**(A) Immigrants**
**(i) In general**
Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission—
   **(I)** who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title, . . .
      . . .
      is inadmissible.

Ultimately, based on Petitioner RANM's answers during the screening, the AO determined on January 2, 2020—with a supervisory AO's concurrence—that Petitioners were "part of the amenable population" under GACA and had not established an exception to GACA, and thus were subject to removal to Guatemala. [*Id.* at 5-6.] Petitioners were thus issued "Threshold Screening Assessment Notices," stating that they are subject to removal to Guatemala under GACA for consideration of their asylum and protection claims under Guatemalan law. [Ex. 7.] *See* 8 C.F.R. 208.30(e)(7)(i)(A).

6.   As a result, Petitioners are subject to administratively final expedited removal orders. [Ex. 2.] Petitioners are currently in USBP detention awaiting their removal to Guatemala pursuant to their final expedited removal orders. [Dkt. 1 ¶ 31.] At this time, the Government expects to remove Petitioners to Guatemala on January 21, 2020.

## II.    Procedural History

7.   On January 13, 2020, Petitioners filed the instant suit requesting the following relief:

- *First*, Petitioners seek their release from detention by writ of habeas corpus, with or without an electronic monitoring device, in the custody of the La Posada Providencia shelter; [Dkt. 1 ¶¶ 53, 86-88; Prayer.]

- *Second*, Petitioners seek a judicial declaration under the Declaratory Judgment Act that they have been wrongly detained and treated and subject to release; [*Id.* ¶¶ 82-85.]

- *Third*, Petitioners otherwise seek their relief on grounds that (i) the continued detention of minors YDMN and GRMN is in violation of paragraphs 11, 14, and 15 of the *Flores* settlement agreement in regard to the length and conditions of their detention and access to medical care; (ii) the Government's decision to continue detaining Petitioners is arbitrary and capricious under the Administrative Procedures Act ("APA"); (iii) Petitioners' continued detention violates due process; and (iv) Petitioners' continued detention violates the APA because it violates due process. [*Id.* ¶¶ 55-81; Prayer.]

8.   Additionally, Petitioners request a preliminary and permanent injunction, and they filed a separate motion for a temporary restraining order ("TRO motion") requesting the following relief:

- *First*, "Petitioners should be immediately released from CBP custody, on the condition they will be received into the La Posada Providencia shelter so that they may receive urgent medical care in a non-detained context;"

- *Second*, "Respondents should be enjoined from interfering with Petitioners' access to counsel of their choosing;" and

- *Third*, "Respondents should be enjoined from removing Petitioners to Guatemala or any country until at least their asylum application is considered, and all appeals therefrom are exhausted." [*Id.* ¶¶ 89-92; Dkt. 1-4 at 21.]

9.  On January 17, 2020, Petitioners filed an "expedited motion for a temporary restraining order and habeas corpus relief" incorporating the arguments from their prior pleadings. [Dkt. 10.]

## EXHIBITS

| Gov't Exh. 1. | Petitioners' Record of Deportable/Inadmissible Alien (Form I-213) |
|---|---|
| Gov't Exh. 2. | Petitioners' Notice and Order of Expedited Removal (Form I-860) |
| Gov't Exh. 3. | Petitioners' Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act |
| Gov't Exh. 4. | Consular Notification Sheet |
| Gov't Exh. 5. | GACA Initial Processing Information Sheet |
| Gov't Exh. 6. | GACA Threshold Screening Worksheet |
| Gov't Exh. 7. | GACA Threshold Screening Notice |
| Gov't Exh. 8. | Declaration of Juan Garcia Jr. |
| Gov't Exh. 9. | Interim Final Rule Implementing Bilateral and Multilateral Asylum Cooperative Agreements Under the Immigration and Nationality Act, 84 Fed. Reg. 63994 (Nov. 19, 2019) |
| Gov't Exh. 10. | Agreement Between the Government of the United States of America and the Government of the Republic of Guatemala on Cooperation Regarding the Examination of Protection Claims, 84 Fed. Reg. 64095 (Nov. 20, 2019) |

## STANDARD OF REVIEW

10.  In the Fifth Circuit, there are four prerequisites for obtaining the extraordinary relief of a TRO. To prevail, the applicant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the Defendant; and (4) that the injunction will not disserve the public interest. *See Palmer v.*

*Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009). A plaintiff bears the burden to prove all four requirements in order to be entitled to injunctive relief. *Id*. The denial of TRO will be upheld where the movant has failed to sufficiently establish any one of the four criteria. *Black Fire Fighters Ass'n v. City of Dallas, Tex.*, 905 F.2d 63, 65 (5th Cir. 1990). This is a "difficult" and "stringent" standard for the movant to meet, and the movant bears "the burden of establishing each element." *Whitaker v. Livingston*, 732 F.3d 465, 469 (5th Cir. 2013); *Janvey v. Alguire*, 647 F.3d 585, 591, 595 (5th Cir. 2011). Courts within the Fifth Circuit have made clear that preliminary injunctions and TROs constitute "extraordinary and drastic remed[ies]," which are "not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989); *see also Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999) ("Temporary restraining orders and preliminary injunctions are extraordinary relief and rarely issued.").

11.  This standard is heightened even further for mandatory injunctions that seek to alter the status quo, as Petitioner does here. In those settings, a plaintiff "bears the burden of showing a clear entitlement to the relief under the facts and the law." *Justin Indus., Inc. v. Choctaw Secs., L.P.*, 920 F.2d 262, 268 n.7 (5th Cir. 1990); *accord Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.").

## ARGUMENT AND AUTHORITY

**I.   Applicable legal and regulatory framework.**

      **a.  Expedited Removal**

12.   When Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), it amended the Immigration and Nationality Act ("INA") to, among other things, "significantly limit[] the power of federal courts to review § 1225(b)(1) expedited-removal orders." *U.S. v. Herrera-Orozco*, C-11-542, 2011 WL 3739160, at *1 (S.D. Tex. 2011) (citing *Brumme v. INS*, 275 F.3d 443, 447 (5th Cir. 2001)).  The streamlined removal provision under § 1225(b)(1), known as "expedited removal," applies to aliens arriving at ports of entry and to aliens who enter illegally or who are apprehended within 100 miles of the border and cannot show they were physically present in the United States continuously for the prior fourteen (14) days. *See* 8 U.S.C. § 1225(b)(l)(A)(iii); 69 Fed. Reg. 48877-01, 48880 (Aug. 11, 2004).

13.   Section § 1252(a)(2)(A) provides that "[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to review . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) [(governing expedited removal)] of this title," except as provided in Section 1252(e). *See* 8 U.S.C. § 1252(a)(2)(A).

14.   Section 1252(e)(1) provides that no court may enter "declaratory, injunctive, or other equitable relief" pertaining to an expedited removal order except as "specifically authorized in a subsequent paragraph of this subsection." *See* 8 U.S.C. § 1252(e)(1).

15.   Section 1252(e)(2) provides the sole means of review of an expedited removal order is limited to the following determinations: "(A) whether the petitioner is an alien; (B) whether the petitioner was ordered removed under [the expedited removal statute, 8 U.S.C. § 1225], and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee . . . , or has been granted

asylum[.]"[2] 8 U.S.C. § 1252(e)(2)(A)–(C); *see also id.*, § 1252(e)(5) ("There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.").

### b. Guatemala Asylum Cooperative Agreement

16.  Once an alien is inside the United States, he or she may generally apply for asylum: "Any alien who is physically present in the United States or who arrives in the United States . . . may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title." 8 U.S.C. § 1158(a)(1). However, Congress granted the Attorney General and the Secretary of Homeland Security[3] a statutory exception to asylum in the INA known as the "safe third country" provision. 8 U.S.C. § 1158(a)(2)(A). Under this provision, the Government can remove a foreign national otherwise eligible for asylum,

> pursuant to a bilateral or multilateral agreement, to a country (other than the country of the alien's nationality or, in the case of an alien having no nationality, the country of the alien's last habitual residence) in which the alien's life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, and where the alien would have access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection, unless the Attorney General finds that it is in the public interest for the alien to receive asylum in the United States.

8 U.S.C. § 1158(a)(2)(A).

17.  When the Government "determines" that the listed conditions are satisfied, and does not "find[] that it is in the public interest for the alien to receive asylum in the United States," the alien is categorically barred from applying for asylum in this country. *Id.* Under those

---

[2]    There is a separate exception, not applicable here, to so-called "systemic" challenges to the expedited removal system—meaning a generalized challenge to the expedited removal system or the procedures implementing that system. *See Brumme*, 275 F.3d at 449

[3]    Pursuant to the Homeland Security Act of 2002, statutory references to the Attorney General now refer to the Secretary of Homeland Security as well. *See* 6 U.S.C. § 557 ("With respect to any function transferred by or under this chapter [principally enacted by the Homeland Security Act of 2002] … and exercised on or after the effective date of this chapter, reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary [of Homeland Security], other official, or component of the Department [of Homeland Security] to which such function is so transferred.").

circumstances, section 1158(a)(1)—the provision permitting an alien who "is physically present in the United States or who arrives in the United States" to apply for asylum—"shall not apply." *Id.*

18.   On November 19, 2019, the Attorney General and the Acting Secretary of Homeland Security issued the Asylum Cooperation Agreement ("ACA") Rule to "provide a general mechanism" to implement existing and future ACAs as described in 8 U.S.C. § 1158(a)(2)(A).[4] 84 Fed. Reg. 63994 (Nov. 19, 2019) (codified at 8 C.F.R. §§ 208.4, 208.30, 1003.42, 1208.4, and 1240.11). [Ex. 9.] The Rule "is intended to aid the United States in its negotiations with foreign nations on migration issues," particularly as the United States "seeks to develop a regional framework with other countries to more equitably distribute the burden of processing the protection claims of the hundreds of thousands of irregular migrants" who come to the United States every year to seek asylum. *Id.* at 63,997. The Rule permits immigration officers to apply agreements entered into pursuant to section 1158(a)(2)(A), including bilateral ACAs recently entered into with El Salvador, Guatemala, and Honduras, to "aliens who arrive at a U.S. port of entry, or enter or attempt to enter the United States between ports of entry, on or after" November 19, 2019. *Id.* at 63,994.

19.   To date, the only agreement that is subject to the ACA rule and which has been implemented is the United States' agreement with Guatemala. *See* Agreement Between the Government of the United States of America and the Government of the Republic of Guatemala on Cooperation Regarding the Examination of Protection Claims, 84 Fed. Reg. 64,095 (Nov. 20, 2019) ("Guatemala ACA" or "GACA"). Under the GACA, the Guatemalan Government recognizes, among other things, its "obligation" to "provide for the protection of [qualifying]

---

[4] The 2002 U.S-Canada Agreement is not covered by the ACA Rule and has a separate implementing regulation.

refugees . . . who are physically in their respective territories," in accordance with international agreements and its laws. [Ex. 10 at 2.] Additionally, the Guatemalan Government has agreed to "evaluate the requests for protection" made by persons who are removed to Guatemala under the Agreement on an "individual basis," consistent with its "migration policies and laws." [*Id.* at 4.] The United States and Guatemalan Governments also agree to "develop operating procedures" to implement the agreement, including notice requirements and periodic evaluations "to correct any deficiencies found." [*Id.* at 5.]

20.  As implemented in the United States, the ACA Rule creates a bar that restricts "whether an alien may even apply for asylum." 84 Fed. Reg. at 63996. Thus, as relevant here, the rule establishes "a screening mechanism to evaluate whether an alien who would otherwise be removable to [Guatemala] under [GACA] . . . can establish that it is more likely than not that he or she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion, or would be tortured in [Guatemala]." *Id.*; 8 C.F.R. § 208.30(e)(7). Specifically, during the "threshold screening" under GACA, which may be conducted by an asylum officer or immigration judge, the official must conduct a two part inquiry to determine (1) "whether [the] alien is subject to [GACA]," and, (2) whether the alien, if he or she "affirmatively state[s] a fear of removal to [Guatemala]," can "affirmatively establish it is more likely than not" that he or she "would be persecuted or tortured in that country. " 84 Fed. Reg.at 63998; 8 C.F.R. § 208.30(e)(7). "If the asylum officer, with concurrence from a supervisory asylum officer, determines during the threshold screening interview that an alien does not qualify for an exception under [GACA], and, if applicable, that the alien has not demonstrated that it is more likely than not that he or she would be persecuted on account of a protected ground or tortured

in [Guatemala], the alien is ineligible to apply for asylum in the United States." 8 C.F.R. §
208.30(e)(7)

21.   Under 8 U.S.C. § 1158(a)(3) "[n]o court shall have jurisdiction to review any
determination of the Attorney General under [§ 1158(a)(2)]," which includes the "safe-third
country" bar to asylum at § 1158(a)(2)(A).

**II.    Petitioners are not likely to prevail on the merits of their claims because the
Court lacks jurisdiction over the Petition as it challenges the Government's
decision to process Petitioners for expedited removal pursuant to the GACA.**

22.  This Court does not have jurisdiction over Petitioners' petition and TRO motion. As
noted below, Petitioners' petition and TRO motion directly attack the Government's decision to
place Petitioners in expedited removal and remove them to a safe-third country to the GACA.
Congress has explicitly barred courts from reviewing these determinations. And while Petitioners
have brought various causes of actions under the *Flores* Settlement Agreement, APA, Fifth
Amendment, Declaration Judgment Act, and All Writs Act, Petitioners have failed to demonstrate
that any of these causes of action are jurisdictionally cognizable.

**a.  This Court has no jurisdiction to review Petitioners' expedited removal
orders.**

23.  In enacting the IIRIRA, "Congress significantly limited the power of federal courts to
review § 1225(b)(1) expedited-removal orders." *United States v. Herrera-Orozco*, CRIM.A. C-
11-542, 2011 WL 3739160, at *1 (S.D. Tex. 2011) (citing *Brumme*, 275 F.3d at 447). Section
1252(a)(2)(A) provides that, "[n]otwithstanding any other provision of law (statutory or
nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and
section[] . . . 1651 [All Writs Act] . . . no court shall have jurisdiction to review . . . any individual
determination or to entertain any other cause or claim arising from or relating to the

implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title," except as provided in Section 1252(e). Section 1252(e)(1) provides that no court may enter "declaratory, injunctive, or other equitable relief" pertaining to an expedited removal order except as "specifically authorized in a subsequent paragraph of this subsection." Section 1252(e)(2) provides the sole means of review of an expedited removal order, stating in its entirety:

**(2) Habeas corpus proceedings**

Judicial review of any determination made under section 1225(b)(1) of this title is *available in habeas corpus proceedings, but shall be limited to* determinations of—

(A) whether the petitioner is an alien,
(B) whether the petitioner was ordered removed under such section, and
(C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.

8 U.S.C. § 1252(e)(2) (emphasis added); *see also id.*, § 1252(e)(5) ("There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.").

24.  A petitioner cannot circumvent the jurisdiction bar under § 1252(e) with a petition under 28 U.S.C. § 2241. *See Hidalgo-Mejia v. Pitts*, 343 F. Supp. 3d 667, 671 (W.D. Tex. 2018) ("[B]ecause 8 U.S.C. § 1252(e)(2) strips this Court of jurisdiction to review or set aside Petitioner's order of expedited removal, this Court lacks jurisdiction to consider Petitioner's claims pursuant to 28 U.S.C. § 2241.").

25.  In this case, because there is no dispute that the expedited removal orders at issue were entered pursuant 8 U.S.C. § 1225(b)(1), "the scope of federal habeas relief outlined in Section 1252(e)(2) applies, and the Court's inquiry is limited to the three matters listed" in that statute. *See Herrera-Orozco*, 2011 WL 3739160, at *2; *see also Morales-Batres by de Morales v. Bennet*, 2018

14

WL 1733379, at *2 (S.D. Tex. 2018), *report and rec. adopted*, 2018 WL 1730311 (S.D. Tex. 2018) (Olvera, J.) ("Morales-Batres's order of expedited removal was issued pursuant to 8 U.S.C. § 1225(b)(1). Thus, the Court's inquiry is limited to the three matters enumerated in § 1252(e)(2)(A)-(C)."). Moreover, Petitioners do not contest that they are aliens. Nor do they contest that they were ordered removed under 8 U.S.C. § 1225(b)(1). Finally, Petitioners do not argue that they are lawful permanent residents, admitted refugees, or that they have been granted asylum. Because Petitioners have not raised any of the issues that a federal court is permitted to consider under Section 1252(e)(2), the Court lacks jurisdiction to grant habeas relief. *See, e.g.*, *Brumme*, 275 F.3d at 448 ("With respect to expedited removal orders, the statute could not be much clearer in its intent to restrict habeas review".); *accord Castro v. DHS*, 835 F.3d 422, 431 (3d Cir. 2016) (joining the Fifth Circuit and others in finding that these provisions strip courts of jurisdiction over any challenges to expedited removal orders other than as permitted by 8 U.S.C. § 1252(e)(2)).

26.   Finally, to the extent Petitioners suggest that the Court may review their claims under the Suspension Clause, notwithstanding the clear text of section 1252(e)(2) and (3), the Fifth Circuit and numerous over courts within this circuit have concluded that the Suspension Clause does not supply jurisdiction. *See Brumme*, 275 F.3d at 448 (characterizing argument that courts have jurisdiction under § 1252(e)(2)(B) to determine whether the expedited removal statute "was applicable in the first place" as an attempt to make "an end run around" the "clear" language of § 1252(e)(5)); *Hidalgo-Mejia*, 343 F. Supp. 3d at 671 ("Petitioner was detained within days after entering the United States and cannot invoke the Constitution, including the Suspension Clause, in an effort to force judicial review beyond what Congress has already granted her"); *Bansci v. Nielsen*, 321 F. Supp. 3d 729, 734 (W.D. Tex. 2018) (same); *Diaz Rodriguez v. U.S. Customs & Border Prot.*, 6:14-CV-2716, 2014 WL 4675182, at *4 (W.D. La. 2014), *vacated sub nom. Diaz-*

*Rodriguez v. Holder*, 14-31103, 2014 WL 10965184 (5th Cir. 2014) ("[T]he legislatively imposed limitation on review of his expedited removal order in his particular case does not run afoul of the Suspension Clause.").

> **b.   This Court has no jurisdiction to review the Government's decision to remove Petitioners to Guatemala pursuant to the GACA.**

27.   The challenge to the Government's decision to remove Petitioners to Guatemala pursuant to the GACA is jurisdictionally barred by federal law. First, to the extent Petitioners argue that their removal pursuant to the application of the GACA implicates the review provisions of Section 1252(e), this claim lacks merit. The provisions of Sections 1252(e)(2) and (e)(5) provide citizens, aliens with lawful status, and aliens wrongly identified, or for whom an expedited removal order does not in fact exist, a means of challenging their expedited removal.[5] Petitioners do not fall within these categories. *See* 8 U.S.C. § 1252(e)(2)(A)-(C). A challenge to enforcement of the GACA does not provide any basis under the INA for federal court review of an expedited removal order. Nor does the constitution provide any greater rights. "[A]n alien seeking initial admission to the United States," such as Petitioners, "requests a privilege and has no constitutional rights regarding his application[.]" *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). Such aliens "on the threshold of initial entry" have no right to any greater process than Congress provided, *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953), here the ability to seek asylum in Guatemala under the GACA. As cited above, the Fifth Circuit and numerous other courts within this circuit , analyzing the applicability of the Sections 1252(e)(2) and (e)(5), have explicitly or implicitly rejected statutory or constitutional claims seeking review of any other challenges to

---

[5]      So-called "systemic" challenges to the validity of the expedited removal statutes and implementing regulations and policies may be raised only in United States District Court for the District of Columbia within 60 days of implementation. *See* 8 U.S.C. § 1252(e)(3). To the extent that Petitioners' argument is read as a facial claim to the validity of section 1225(b)(1) as implemented through the GACA, such claim may only be brought in the District of Columbia.

expedited removal orders other than as expressly authorized by section 1252(e), such as the challenge Petitioners raise here. And recently, a district court has held that this same jurisdictional bar applies to aliens challenging expedited removal orders pursuant to safe-third country agreements. *See Bansci*, 321 F. Supp. at 736 (holding that § 1252(e) strips courts of jurisdiction to review expedited removal orders as implemented through the safe-third country agreement with Canada).

28.   Second, to the extent Petitioners are challenging the applicability of GACA to their cases, this Court lacks jurisdiction under two separate sections of the INA—8 U.S.C. §§ 1158(a)(3) and 1252(a)(2)(B)(ii).

29.   Under 8 U.S.C. § 1158(a)(3), the Court lacks jurisdiction under over Plaintiffs' challenge to the government's determination that the ACA Rule applies to them. The Departments promulgated the Rule under section 1158(a)(2)(A), which strips an alien of asylum-application eligibility if the government "determines that the alien may be removed, pursuant to a bilateral or multilateral agreement, to a" third country "in which the alien's life or freedom would not be threatened on account of" a protected ground, "and where the alien would have access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection, unless the Attorney General [or the Secretary] finds that it is in the public interest for the alien to receive asylum in the United States." 8 U.S.C. § 1158(a)(2)(A). Congress squarely provided that "[n]o court shall have jurisdiction to review any determination of the Attorney General [or the Secretary] under" section 1158(a)(2)(A). *Id.* § 1158(a)(3). The phrase "any determination" in section 1158(a)(3) refers to any of the things the government "determines" under section 1158(a)(2)(A)— including the determination that an alien "may be removed, pursuant to a multilateral or bilateral

agreement," in the first place. Thus, § 1158(a)(3) jurisdictionally forecloses this Court from considering Petitioners' removal to Guatemala pursuant to the GACA.

30.   Under section 1252(a)(2)(B)(ii), the Court lacks jurisdiction to enjoin the government from evaluating an alien for ACA-amenability. Congress divested this Court of jurisdiction to review "any . . . decision or action of the Attorney General or the Secretary of Homeland Security that authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." 8 U.S.C. § 1252(a)(2)(B)(ii). Such decisions must be "specified under [8 U.S.C. §§ 1151–1378] to be in the discretion" of the Secretary. *Kucana v. Holder*, 558 U.S. 233, 239 (2010). And the fact that the specific provision does not use the word "discretion" does not mean section 1252(a)(2)(B)(ii) does not apply. *See Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005). Rather, section 1252(a)(2)(B)(ii) applies if the judgment to be rendered is, by statute, "entirely within [the] judgment or conscience" of the Secretary. *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 690 (9th Cir. 2003). The statute simply must "vest[] the government with authority to make a discretionary decision." *Poursina v. USCIS*, 936 F.3d 868, 871 (9th Cir. 2019).

31.   Section 1158(a)(2)(A), coupled with section 1158(a)(3), does just that. The statute provides that an alien may be removed to a third country "if the Attorney General determines that the alien may be removed pursuant to a bilateral or multilateral agreement" to that country, that "the alien's life or freedom would not be threatened" on account of a protected ground, and "the alien would have access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection." 8 U.S.C. § 1158(a)(2)(A). This grant of authority does not provide any statutory standard to apply—it calls for the exercise of "'expertise and judgment unfettered by any statutory standard whatsoever.'" *Poursina*, 936 F.3d at 872 (quoting *Zhu*, 411 F.3d at 295). And

section 1158(a)(3) categorically bars review of the exercise of that expertise and judgment. The decision to apply section 1158(a)(2)(A) to a specific alien, through the Rule or otherwise, is thus "'entirely discretionary'" and covered by section 1252(a)(2)(B)(ii). *See Poursina*, 936 F.3d at 872.

> **c.  Notwithstanding the jurisdictional bars, Petitioners' claims regarding the denial of a right to counsel and right to pursue asylum are foreclosed by 8 U.S.C. § 1158(a)(2)(A), the GACA, and the implementing regulations.**

32.  Notwithstanding these jurisdictional bars, Petitioners allege that they "are entitled to consult with legal counsel, receive a credible fear interview under 8 U.S.C. §1225(b) and proceed with the asylum process, pursuant to due process of law." [Dkt. 1 ¶ 45.]

33.  Even assuming, *arguendo*, that Petitioners could somehow overcome the jurisdictional bars, none of these claims have merit.

34.  *First*, because Plaintiffs are subject to removal under GACA, they are statutorily ineligible to apply for asylum in the United States. *See* 8 U.S.C. § 1158(b)(2)(A); 8 C.F.R. § 208.30(e)(7)(i)(A) ("If . . . an alien does not qualify for an exception under [GACA], and, . . . the alien has not demonstrated that it is more likely than not that he or she would be persecuted on account of a protected ground or tortured in [Guatemala], the alien is ineligible to apply for asylum in the United States."); 84 Fed. Reg. at 63,996 ("In contrast to statutory and regulatory bars providing that certain aliens are ineligible to receive asylum, . . . the ACA bar relates to whether an alien may even apply for asylum.").

35.  *Second*, because Plaintiffs are subject to removal under GACA, they are ineligible to pursue credible fear interviews with an asylum officer. Under the regulations implementing GACA, "[w]hen an immigration officer has made an initial determination that an alien…appears to be subject to the terms of an agreement authorized by section 208(a)(2)(A) of the Act, and seeks the alien's removal consistent with this provision, *prior to any determination concerning whether*

*the alien has a credible fear of persecution or torture,* the asylum officer shall conduct a threshold screening interview" concerning the alien's eligibility for removal under that agreement. 8 C.F.R. § 208.30(e)(7) (emphasis added). The right to a credible fear interview is triggered only if an asylum officer determines that an alien is not eligible for removal under an ACA. *See* 8 C.F.R. § 208.30(e)(7)(ii) (providing that a "determination concerning whether the alien has a credible fear of persecution or torture" occurs only after a finding that an alien is not amenable to removal under an ACA); 84 Fed. Reg. at 64,001 ("If the asylum officer determines that the alien is not subject to the Agreement, or meets an exception, the asylum officer proceeds to conduct a credible fear interview.").

36.   *Third*, there is also no right to counsel in statute or regulation for aliens in expedited removal proceedings under 8 U.S.C. § 1225(b)(1). *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2017) (holding that noncitizen's "claim that he was denied his right to counsel [in expedited removal proceeding] is meritless on its face"); *Rivera-Rosa v. McAleenan*, No. 1:19-CV-00095, 2019 WL 5191095, at *22 (S.D. Tex. Oct. 15, 2019) (same); *United States v. Roque-Cerda*, No. 19-CR-20419, 2020 WL 42875, at *8 (E.D. Mich. Jan. 3, 2020) ("Roque-Cerda has not provided, and the Court is unable to find, any legal authority that noncitizens in expedited removal proceedings have a right to counsel.").

37.   It is true that for aliens provided credible fear interviews under 8 U.S.C. § 1225(b)(1)(A)(ii), there is a right to "consult with a person or persons of the alien's choosing," including counsel, before their credible fear interview, provided that the consultation is "at no expense to the Government" and does not "unreasonably delay the process." 8 U.S.C. § 1225(b)(1)(B)(iv); 8 C.F.R. § 235.3(b)(4)(i)(B). However, as noted below, because Petitioners are

subject to removal under GACA, they are not entitled to credible fear interviews, 8 C.F.R. §

208.30(e)(7), and, therefore, no right to consult applies to their cases.

38.   Indeed, the rule implementing GACA specifically declined to include a consultation

provision. *See* 64 Fed. Reg. at 64,003 (stating that "[i]n contrast to the final rule implementing the

U.S.-Canada Agreement that provided an alien with a minimal consultation period prior to the

threshold screening interview to determine the applicability of the Agreement, this rule does not

mandate such a period" and that "[t]he bilateral ACAs that the United States has signed as of the

effective date of this rule include agreements with El Salvador, Guatemala, and Honduras and

incorporate fewer and less complex exceptions than the U.S.-Canada Agreement, eliminating the

need for a consultation period analogous to the consultation period permitted by the U.S.-Canada

Agreement").

> **d.   This Court has no authority to stay or otherwise enjoin the Government from removing Petitioners from the United States.**

39.   Petitioners' request to enjoin the Government from executing their final orders of

removal by removing them to Guatemala is foreclosed by 8 U.S.C. § 1252(g). Section 1252(g)

provides that "notwithstanding any other provision of law (statutory or nonstatutory), including

section 2241 of Title 28, or any other habeas corpus provision, and section[] . . . 1651 [All Writs

Act] . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien

arising from the decision or action . . . to execute removal orders against any alien under this

chapter." The Fifth Circuit has recognized that "the Congressional aim of § 1252(g) is to protect

from judicial intervention the Attorney General's long-established discretion to decide whether

and when . . . to execute removal orders." *See Cardoso v. Reno*, 216 F.3d 512, 517 (5th Cir. 2000)

(internal quotations omitted). And based on this precedent, the Fifth Circuit has repeatedly held

that § 1252 strips district courts of the jurisdiction to consider requests for a stay of removal proceedings. *Idokogi v. Ashcroft*, 66 F. App'x 526 (5th Cir. 2003) (per curiam) ("The district court therefore correctly determined that it lacked jurisdiction to stay the order of removal."); *Fabuluje v. Immigration & Naturalization Agency*, 244 F.3d 133 (5th Cir. 2000) (per curiam) ("[T]he district court correctly determined that it was without jurisdiction to consider Fabuluje's request for a stay . . . ."); *see also Bacchus v. U.S. Attorney Gen.*, 2014 WL 12584309, at *1 (N.D. Tex. Aug. 7, 2014) ("To the extent that Petitioner's request is for an order for expedited removal, it is a request for relief from a decision or action to execute a deportation order and this Court is without jurisdiction to consider the request.").

> **e. This Court may not rely on the APA to restore the Court's subject matter jurisdiction over the Government's decision to process Petitioners for expedited removal and remove Petitioners to Guatemala pursuant to the GACA**

40.   To the extent Petitioners' APA claim can be read as attacking the Government's decision to process Petitioners for expedited removal under GACA, such a claim is likewise jurisdictionally foreclosed. The APA provides judicial review for "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Hinojosa v. Horn*, 896 F.3d 305, 310 (5th Cir. 2018) (quoting 5 U.S.C. § 702). However, "[n]otwithstanding this broad definition," the Fifth Circuit has emphasized that "the APA limits the sort of 'agency action[s]' to which it applies" because the "statute requires that the challenged act be an '[a]gency action *made reviewable by statute* and *final agency action* for which there is no other adequate remedy in a court.'" *Hinojosa*, 896 F.3d at 310 (citing 5 U.S.C. § 704) (emphasis added). Further, the APA cannot be invoked where other substantive "statutes

preclude judicial review." 5 U.S.C. § 701(a)(1); *see also St. Tammany Parish, ex rel. Davis v. FEMA*, 556 F.3d 307, 318, n.6 (5th Cir. 2009).

41.   Because judicial review of expedited removal orders is precluded, as described above, by 8 U.S.C. §§ 1252(g), 1252(a)(2)(A), and/or 1252(e)(2), courts have repeatedly held that the APA is unavailable to challenge an order of expedited removal.[6] *See Hidalgo-Mejia*, 343 F. Supp. 3d at 673 ("As § 1252(e)(2) strips this Court of jurisdiction to review or set aside Petitioner's order of expedited removal, judicial review under the APA is not available."); *Shah v. Dir., Jackson Par. Correctional Ctr.*, No. 3:19-CV-1164, 2019 WL 4254139, at *3 (W.D. La. Sept. 6, 2019) ("Given the applicability of § 1252(e)(2), under which this Court has no jurisdiction to review or set aside Shah's order of expedited removal, judicial review under the APA is also unavailable."). Similarly, the jurisdiction-stripping provision in 8 U.S.C. § 1158(a)(3) prevents Petitioners from invoking the APA to challenge the Government's decision to remove Petitioners to Guatemala under GACA.

**III.     Petitioners' ongoing detention is lawful and this Court lacks jurisdiction to order their release**

42.   Petitioners' petition significantly focuses on challenging their ongoing detention in CBP custody. First, Petitioners allege that their ongoing detention violates the *Flores* Settlement Agreement, the APA, and the due process clause of the Fifth Amendment. Petitioners further allege that they are entitled to habeas relief because the Government is "currently holding Petitioners, a mother and her minor children (18 months old and 6 years old), in CBP custody in violation of the

---

[6]     *See also* 8 U.S.C. § 1252(f)(2) which provides that, "[n]otwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section, unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." 8 U.S.C. § 1252(f)(2). *See also Hurley v. Immigration & Customs Enf't*, 2007 WL 1068478, at *1 (W.D. La. 2007) ("Pursuant to 8 U.S.C. § 1252(f)(2) and 1252(g), as amended by the REAL ID Act of 2005, which governs judicial review of orders of removal, a district court lacks jurisdiction to prevent the execution of removal orders.")

*Flores* Settlement Agreement (which is binding law), federal statutes and regulations, and the U.S. Constitution." [Dkt. 1 ¶ 87.]

> **a. Petitioners' habeas corpus claim fails because their detention is lawful, and this Court lacks jurisdiction to order their release from custody**

43.   "An individual may seek habeas relief under 28 U.S.C. § 2241 if he is 'in custody' under federal authority 'in violation of the Constitution or laws or treaties of the United States.'" *Rivera-Rosa*, 2019 WL 5191095, at *14 (quoting 28 U.S.C. § 2241(c)). The sole function of habeas corpus is "to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre v. United States*, 525 F.2d 933, 935-36 (5th Cir. 1976). As outlined below, Petitioners habeas claims are not cognizable as Petitioners are lawfully detained under the INA.

44.   Petitioners are, as of January 2, 2020, subject to final orders of removal under 8 U.S.C. § 1225(b)(1). As recognized by the Supreme Court, "Aliens covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) (quoting § 1225(b)(1)(A)(i)).

45.   Aliens placed in § 1225(b)(1) expedited removal proceedings, to the extent they are not promptly removed, are subject to mandatory detention by regulation and statute. *See* 8 C.F.R. § 235.3(b)(2)(iii) ("An alien whose inadmissibility is being considered under this section or who has been ordered removed pursuant to this section shall be detained pending determination and removal, except that parole of such alien, in accordance with section 212(d)(5) of the Act, may be permitted only when the Attorney General determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective."); *see also Demore v. Kim*, 538 U.S. 510, 530 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."). The Supreme Court has

recognized that detention is justified to avoid the risk of aliens "either absconding or engaging in criminal activity before a final decision can be made." *Jennings*, 138 S.Ct. at 836.

46.   Once a removal order becomes "final," the Secretary of Homeland Security has ninety days to effect an alien's departure from the United States. 8 U.S.C. § 1231(a)(1); *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).  Aliens may be detained during the removal period. *See* 8 U.S.C. § 1231(a)(2). If an alien is not promptly removed within the removal period, then he may be eligible for supervised release until removal can be accomplished. See 8 U.S.C. § 1231(a)(3). In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that the Fifth Amendment's Due Process Clause does not permit indefinite detention lasting beyond six months past the ninety-day removal period found in § 1231(a). After the expiration of six months, an alien may seek his release from custody by demonstrating a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."

47.   Here, the six-month period in *Zadvydas* has not been triggered. Petitioners are still within the removal period and they do not claim that their removal to Guatemala is not reasonably foreseeable. Thus, Petitioners cannot state a claim under *Zadvydas* at this time and, therefore, the request for habeas relief must be denied. *See Akinwale v. Ashcroft*, 287 F.3d 1050, 1051–52 (11th Cir. 2002) ("This six-month period thus must have expired at the time Akinwale's § 2241 petition was filed in order to state a claim under *Zadvydas*."); *Okpoju v. Ridge*, 115 F. App'x 302 (5th Cir. 2004) ("The district court properly denied Okpoju's claim regarding his continued detention as premature because, at the time of the district court's ruling, Okpoju had not yet been in custody longer than the presumptively reasonable six-month post removal order period.").

48.   Moreover, while Petitioners have challenged CBP's decision denying their request for parole and have requested that the Court issue an order "directing Respondents to release

25

Petitioners within 24 hours, with or without an electronic monitoring device, at no cost to Petitioners" or "issue an injunction restraining and enjoining Respondents from not releasing Petitioners, with or without an electronic monitoring device, at no cost to Petitioners," [Dkt. 1, Prayer], the Court lacks jurisdiction to grant such relief.

49.   The Supreme Court has made it clear that 8 U.S.C. § 1226(e) precludes an alien from "challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Jennings*, 138 S. Ct. at 841 (quoting *Demore*, 538 U.S. at 516). The Supreme Court has also specified that a decision unambiguously "specified by statute 'to be in the discretion of the [Government]'"—as in the decision whether to parole an alien pursuant to 8 U.S.C. § 1182(d)(5)(A)—is "shielded from court oversight by § 1252(a)(2)(B)(ii)." *Kucana v. Holder*, 558 U.S. 233, 248 (2010). This is in accord with longstanding Fifth Circuit precedent. *See Loa–Herrera v. Trominski*, 231 F.3d 984, 990–91 (5th Cir.2000) ("Congress, however, has denied the district court jurisdiction to adjudicate deprivations of the plaintiffs' statutory and constitutional rights to parole."); *Maldonado v. Macias*, 150 F. Supp. 3d 788, 795 (W.D. Tex. 2015) ("Under § 1252(a)(2)(B)(ii), this Court has no jurisdiction to review the Attorney General's discretionary decision not to apply the presumption and the resulting denial of parole."). For this reason, this Court lacks jurisdiction to direct the Government to parole/release Petitioners from custody.

**b.  The Court lacks jurisdiction to grant release from detention under the APA.**

50.   Petitioners alleges several claims under the APA.

51.   *First*, Petitioners claim the Government's "decision to continue detaining Petitioners after seventy-two (72) hours is arbitrary and capricious that must be set aside, pursuant to the [APA]." [Dkt. 1 ¶ 67.]

52. *Second*, Petitioners allege that the Government's "decision to continue detaining them is 'not in accordance with the law' because it violates the requirements of the *Flores* Settlement Agreement by detaining them for over seventy-two (72) hours and in a facility that is neither safe nor sanitary." [Dkt. 1 ¶ 69.]

53. *Third*, Petitioners seek to incorporate by reference their freestanding Fifth Amendment due process claims in count three as claims under the APA. [Dkt. 1 ¶ 81.]

54. All of these claims fail.

55. As an initial mater, APA review of Petitioners' ongoing detention and declination to parole Petitioners from custody is jurisdictionally foreclosed by 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii) for the same reasons as set forth above. *See Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 926 (W.D. Tex. 2018) ("Sections 1226(e) and 1252(B)(ii) strip the Court of jurisdiction to hear the APA claim."). And for this same reason, APA review is precluded because decisions regarding whether to parole an alien are "committed to agency discretion by law" 5 U.S.C. § 701(a)(2); *Palacios v. DHS*, 407 F. Supp. 3d 691, 698 (S.D. Tex. 2019) ("[T]his court lacks jurisdiction to review denials of parole under the Immigration and Nationality Act because these actions are 'committed to agency discretion by law.'") (citing 5 U.S.C. § 701(a)(2)).

56. Further, the Government's "decision" to detain Petitioners for more than 72 hours is not "final agency action" under the APA. *See Bouchard Transportation Co. v. DHS*, 384 F. Supp. 3d 775, 778 (S.D. Tex. 2019), *appeal dismissed*, 2019 WL 5576841 (5th Cir. May 14, 2019) ("Without a statutory provision or final agency action, however, a court lacks subject matter jurisdiction over an APA claim") (citing *Am. Airlines v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999)). To be "final," an agency action must "mark the consummation of the agency's decisionmaking process" and "be one by which rights or obligations have been determined, or

from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (quotation omitted). For this reason, Courts within the Fifth Circuit have repeatedly held the detention of aliens and inmates does not give rise to a cause of action under the APA. *See Rivera-Rosa*, 2019 WL 5191095, at *19 ("No legal consequences flow from CBP's detention of aliens and no rights are affected by whether a detained alien remains in CBP custody for two days or twenty days."); *Bhatia v. Warden*, No. 1:16-CV-576, 2016 WL 4573971, at *2 (W.D. La. June 23, 2016), *report and recommendation adopted*, No. 1:16-CV-576, 2016 WL 4574012 (W.D. La. Aug. 31, 2016) ("Even if Petitioner's temporary detention was based on an administrative decision, it would be tentative in nature, not a 'final agency action' as required for judicial review.").

57.   In addition to reasons set forth above—lack of jurisdiction, committed to agency discretion, and lack of final agency action—Petitioners' APA claims cross-referencing procedural and substantive due process claims under the Fifth Amendment[7] are subject to denial for several other reasons.

58.   In support of the due process claims, Petitioners assert that the Government has yet to justify their detention and that "[a]ny interest that Respondents may have in effectuating Petitioners' potential removal does not outweigh the right, under the Constitution and the federal statutes and regulations governing their custody, to fair and meaningful review of their detention." [Dkt. 1 ¶ 74]. Petitioners next assert that the "detention of Petitioners without a credible fear interview and hearing before a neutral decision-maker to determine whether their detention is

---

[7] Petitioners also bring these constitutional claims as direct causes of action. However, Petitioners have not demonstrated that the Court has jurisdiction over directly filed constitutional claims. "Although there have been a few notable exceptions, the federal courts, and this Circuit in particular, have been hesitant to find causes of action arising directly from the Constitution." *Alexander v. Trump*, 753 F. App'x 201, 206 (5th Cir. 2018) (rejecting a freestanding constitutional complaint against the FBI). Moreover, direct constitutional violations are duplicative where a statutory mechanism, such as habeas, exists for the relief sought. *See Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir. 1994).

necessary, especially as two of Petitioners are minors, violates their procedural due process rights under the Due Process Clause." [Dkt. 1 ¶ 75]. Finally, Petitioners allege that their detention violates their "right to be free from physical restraint." [Dkt. 1 ¶ 77].

59.   An alien seeking admission to the United States requests a privilege and has no constitutional rights regarding that application for admission. *See Landon*, 459 U.S. at 32 ("[T]he Court's general reaffirmations of this principle have been legion."  *Kleindienst v. Mandel*, 408 U.S. 753, 765-766 (1972); *see id.* at 767 ("[T]hat the formulation of these policies is entrusted exclusively to Congress has become about as firmly embedded in the legislative and judicial tissues of our body politic as any aspect of our government.") (quoting *Galvan v. Press*, 347 U.S. 522, 531 (1954)); *Mezei*, 345 U.S. at 212; *Harisiades v. Shaughnessy*, 342 U.S. 580, 591 (1952); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *Nishimura Ekiu v. United States*, 142 U.S. 651, 659-660 (1892); *cf. Murray's Lessee v. Hoboken Land & Improvement Co*., 18 How. (59 U.S.) 272, 284 (1855). The Constitution accordingly does not give aliens the right to seek additional procedural protections beyond those Congress provided. *See Gisbert v. U.S. Atty. Gen.*, 988 F.2d 1437, 1442–43 (5th Cir. 1993), *amended*, 997 F.2d 1122 (5th Cir. 1993) ("Petitioners claim that they are entitled to the due process protections of the Fifth Amendment. The Supreme Court has held, however, that excludable aliens are entitled only to those due process rights as are provided by law. Thus, petitioners do not have a general right to the procedural due process guarantees of the Fifth Amendment. Their rights are determined by the procedures established by Congress." (internal citations omitted)). Moreover, for constitutional purposes, an alien apprehended soon after illegally crossing the border is properly treated as an alien seeking initial admission.  *See Yamataya v. Fisher*, 189 U.S. 86 (1903).

60.  Consistent with this line of precedent, Courts have repeatedly recognized that

> [t]he Constitution does not entitle "non-admitted aliens" to "any procedure vis-à-vis their admission or exclusion." "Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." Thus, the regularity of [an alien's] expedited removal proceeding is judged solely by the procedures set out in 8 U.S.C. § 1225(b) and 8 C.F.R. § 1235.3(b).

*United States v. Garcia–Gonzalez*, 791 F.3d 1175, 1177 (9th Cir. 2015) (internal citations omitted).

61.   Here, as outlined above, the Government processed Petitioners for expedited removal and for removal to Guatemala pursuant to the GACA. This was done in accordance with the applicable statutory and regulatory framework governing these provisions. Thus, contrary to Petitioners' argument, their ongoing detention is justified by the fact that they were processed for expedited removal and are subject to final removal orders. *See* 8 U.S.C. §§ 1225(b)(1)(A)(i), 1231(a)(1), (a)(2); 8 C.F.R. § 235.3(b)(2)(iii); *see also Jennings*, 138 S. Ct. at 836 (recognizing that detention is necessary to avoid the risk of aliens "either absconding or engaging in criminal activity before a final decision can be made").

62.   Further contrary to Petitioners' claims, because they were processed for expedited removal and determined to be subject to GACA, they are not entitled to credible fear interviews, 8 C.F.R. § 208.30(e)(7), and they have no statutory or regulatory right to have their detention reviewed by a neutral decision maker.

63.   Concerning Petitioners' substantive due process claim that their detention violates their right to be free from physical restraint, it is well-established Supreme Court precedent that "detention during removal proceedings is a constitutionally permissible part of that process." *Demore,* 538 U.S. at 530; *see also Reno v. Flores,* 507 U.S. 292 (1993) (rejecting due process challenge to no-bail provision and upholding constitutionality of detention ); *Carlson v. Landon*, 342 U.S. 524 (1952) (rejecting aliens' claims they were entitled to be released from detention if they did not pose a flight risk); *Wong Wing v. United States,* 163 U.S. 228, 235 (1896) (deportation

proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character").

### c. This Court lacks jurisdiction to review Petitioners' claims that the Government had violated the *Flores* Settlement Agreement.

64.  Petitioners assert that that the Government's ongoing detention of Petitioners YDMN and GRMN violates the *Flores* Settlement Agreement because CBP is not holding Petitioners in the "least restrictive setting" and because CBP is holding Petitioners for longer than is permissible under the settlement agreement. [Dkt. 1 ¶ 51-65.] Petitioners bring these claims under an independent cause of action and also seek a writ of habeas corpus to vindicate these rights. The Court lacks jurisdiction over these claims because "the *Flores* Settlement cannot, on its own, confer subject-matter jurisdiction on the Court." *Hernandez Culajay v. McAleenan*, 396 F. Supp. 3d 477, 484 (E.D. Pa. 2019).

65.  As the court in *Hernandez Culajay* recently recognized, "The *Flores* Settlement is a consent decree: a judicially-approved agreement between a private class and the executive branch of the United States," "[t]he parties to that case cannot create this Court's jurisdiction by stipulation," and  "the district court that approved the *Flores* Settlement and entered it as a consent decree lacks the power to expand this Court's power because this Court's power, as authorized by the Constitution or by statute, may not be expanded by judicial decree." *Id.* at 484. Indeed, Paragraph 24B of the Settlement Agreement explicitly provides for review only in "any United States District Court with jurisdiction and venue over the matter." As the *Hernandez Culajay* court rightly held, the Settlement's use of "the word 'jurisdiction' must mean 'subject matter jurisdiction." *Id.* Thus, "the Court must have an independent, statutory or constitutional, basis to assert subject matter jurisdiction over claims arising under the settlement agreement." *Id.* The *Hernandez Culajay* court's holding is consistent with Fifth Circuit precedent, which similarly

provides that "just as the scope of the consent decree does not enlarge the court's jurisdiction, the way the parties agreed to implement the remedy contained in the consent decree likewise cannot affect the jurisdictional bounds of the federal courts." *Saahir v. Estelle,* 47 F.3d 758, 762 (5th Cir. 1995).

66.  Moreover, to the extent Petitioners are attempting to rely on a habeas claim to allege violations of the *Flores* Settlement Agreement, such a claim is also foreclosed by well-established case law and the plain language of 28 U.S.C. § 2241. Under 28 U.S.C. § 2241, a federal writ of habeas corpus is authorized where a detainee can show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Rosa-Ramirez*, 2019 WL 5191095, at *14. Given that the *Flores* Settlement Agreement is a consent decree, § 2241 does not provide a remedy for any potential violation. *See Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. July 6, 2016) (noting that the *Flores* Settlement Agreement is a consent decree). As Courts have recognized,

> The *Flores* Settlement is not a law the United States. Congress did not enact it. The executive branch did not promulgate it pursuant to a statutory delegation from Congress. Instead, it is a judicial decree reflecting an agreement between the executive branch and private litigants.

*Hernandez Culajay*, 396 F. Supp. 3d at 485 (internal edits and quotations omitted).

67.  Put another way, "the *Flores* settlement agreement, which is in effect a remedial decree, does not in and of itself confer any constitutional rights upon the Plaintiffs" since "Fifth Circuit case law is clear that remedial decrees confer no such rights." *Walding v. United States*, CIV.A. SA-08-CA124XR, 2009 WL 890265, at *17 (W.D. Tex. 2009) (recognizing that the Fifth Circuit has been clear that a "consent decree does not enlarge statutory or constitutional rights").

68.  In sum, because the *Flores* Settlement Agreement is not a law or treaty of the United States, Petitioners may not bring a habeas claim under 28 U.S.C. § 2241 to allege violation of its

provision. *See Andersen v. Smith*, 2011 WL 3269419, at *4 (S.D. Tex. July 29, 2011) (Atlas, J.) ("Absent a showing that his the decision at issue violates a Treaty or the laws of the United States, he is not entitled to relief under 28 U.S.C. § 2241 and his petition must be dismissed."). Nor can Petitioners rely on the Flores Settlement Agreement as a basis to be ordered released from detention.[8]

### IV.    The Court lacks jurisdiction over Petitioners' Declaratory Judgment Act claim.

69.    Petitioners separately request, pursuant to 28 U.S.C. §§ 2201 and 2202 of the Declaratory Judgment Act, that the Court declare that "that they have been wrongfully detained and treated and are subject to release from CBP custody. [Dkt. 1 ¶85]. The Court lacks jurisdiction to issue this declaration.

> The Declaratory Judgment Act ("DJA") provides:
>
> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of an interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. The Fifth Circuit, and district courts within this Circuit (including this Court), have held that the "Declaratory Judgment Act is not an independent ground for jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are present." *Rogers v. Ingolia*, 424 F. App'x 283, 288 (5th Cir. 2011); *Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 278 (5th Cir. 2010); *accord Parveen v. McAleenan, et al.*, 2019 WL 5616728, at *5 (S.D. Tex. Oct. 18, 2019) (noting that the DJA does not "provide an independent basis for subject matter

---

[8]      *See Villafuerte v. United States*, 7:16-CV- 619, 2017 WL 8793751, at *15 (S.D. Tex. 2017) (dismissing a false imprisonment/FTCA claim brought by a minor who invoked the Flores Settlement Agreement because it amounted to a challenge regarding the specific government agency that should have had custody over the plaintiff for the time at issue, but "she cannot argue" that the United States generally "had no legal right to detain her" at the time).

jurisdiction," but "[r]ather, a federal court must have jurisdiction under another federal statute to then issue a Declaratory Judgment . . .") (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950)); *Vargas v. United States Dep't of Homeland Sec.*, 2014 WL 12673693, at *7 (S.D. Tex. 2014), *rep. & rec. adopted*, 2014 WL 12673694 (S.D. Tex. 2014) ("[DJA] claims, without another basis for jurisdiction, cannot support the district court's jurisdiction. . . . Thus, seeking declaratory judgment, by itself, does not create jurisdiction in the district court.").

70.   Where, as here, a district court lacks jurisdiction over all other claims brought by a plaintiff, the court must dismiss any remaining requests for declaratory relief. *See Darren v. City of New York*, 722 F. App'x 357, 358 (5th Cir. 2018) (affirming dismissal because "plaintiff identifies no other valid basis for jurisdiction" and DJA "does not provide an independent basis for jurisdiction"); *Rogers*, 424 F. App'x at 288 ("Thus, because the district court lacked subject matter jurisdiction over all of Rogers's other claims, the court was also required to dismiss Rogers's declaratory judgment claims."); *Vargas*, 2014 WL 12673693, at *17 ("[T]here is no independent basis for jurisdiction for any of Mejia Vargas's remaining claims for relief. Accordingly, there is no jurisdiction to issue a declaratory judgment and any claim for one should be dismissed."). Because the Court lacks jurisdiction over any other cognizable claim, the Court lacks jurisdiction over the remaining request for declaratory relief.

**V.    Petitioners fail to satisfy the other TRO factors.**

71.   Here, because Petitioners have failed to demonstrate a substantial likelihood on the merits for any of their claims, their motion fails to meet the required standard for injunctive relief and must be denied. However, as a matter of completeness, the Government will also address why the other TRO factors do not support the granting of injunctive relief.

**a.   Petitioners have not demonstrated irreparable injury.**

72.   A TRO addresses continuing or imminent harm; it is not the mechanism by which to seek redress for past harms.   "To seek injunctive relief, the plaintiff must show a real and immediate threat of future or continuing injury apart from any past injury."  *Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014).  "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant."  *Id.* (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)).  In the detention setting, requests for preliminary injunctive relief are "viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration," *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (internal quotations omitted), and "[t]he federal courts are reluctant to second-guess medical judgments made by physicians and other medical professionals," *Moody v. Collier*, , 2019 WL 3765367, at *2 (E.D. Tex. May 17, 2019), *report and recommendation adopted*, 2019 WL 3752624 (E.D. Tex. Aug. 8, 2019). Moreover, it is well-settled that even though an alien may experience hardship resulting from a denial of a stay, the removal of such alien from the United States does not by itself constitute irreparable harm necessary to support an injunction against removal. *See Ignacio v. INS*, 955 F.2d 295, 299 (5th Cir. 1992).

73.   Petitioners assert continued unlawful detention will cause irreparable injury because "two of the Petitioners are minors, one six years old and the other just 18 months old." Petitioners assert that "[t]he 18-month-old has diarrhea and fever intermittently, occurring at least in substantial part because of the inadequate food provided by CBP in the Donna detention facility and the other living conditions. The six year old has influenza, occurring at least in substantial part because of the inadequate living conditions in the Donna detention facility." Petitioners claim that "[t]he CBP detention facilities simply are not designed to supply long-term care for any child, much less sick children."

74.   There are several problems with this claim. As an initial matter, Petitioners have not even demonstrated that this Court has jurisdiction over their claims regarding poor medical care. It is well established in the Fifth Circuit that "claims based on overcrowding in prisons and the denial of medical treatment for inmates cannot be challenged by a habeas corpus petition." *Rivera-Rosa*, 2019 WL 5191095, at *14; *see also Hernandez v. Garrison*, 916 F.2d 291, 293 (5th Cir. 1990) (holding that claims of overcrowding, denial of medical treatment and access to an adequate law library were not proper subjects of a habeas corpus petition); *accord Sarres Mendoza v. Barr*, 2019 WL 1227494, at *2 (S.D. Tex. Mar. 15, 2019) (denying Honduran immigration detainee's motion for leave to amend because proposed claims concerning "conditions of confinement may not be brought in a habeas corpus proceeding, and are actionable, if at all, in a civil rights action.").

75.   But even if these claims were properly before the Court, all three Petitioners have repeatedly been provided medical treatment in U.S. Border Patrol custody by professional contract medical staff to include physicians assistants and nurse practitioners, and it does not appear that RANM and GRMN are suffering from medical conditions that would prevent their removal from the United States. [Ex. 8.] As to Petitioner YDMN, she has repeatedly been provided medical treatment in CBP custody and is currently at the Edinburg Children's Hospital for additional medical care. [*Id.*] The hospital has advised that YDMN will be monitored for two to three more days before she is cleared for release. [*Id.* 8.] Finally, CBP has affirmed that Petitioners will not be removed from the United States until they are cleared for travel by a medical professional. [*Id.*]

76.   To the extent Petitioners disagree with the medical treatment they have been provided, the "disagreement with the medical care [a detainee] is receiving . . . does not state immediate and irreparable injury." *Stockwell v. Kanan*, No. 4:10-CV-031-Y, 2010 WL 11545327, at *1 (N.D. Tex. May 4, 2010). Nor does an allegation of medical care give rise to a claim under federal law.

*See Early v. Dallas Cty. Jail's Med. Doctors*, 163 F.3d 1356 (5th Cir. 1998) ("[C]laims of negligence, neglect, or medical malpractice do not become constitutional violations merely because the victim is a prisoner."). Moreover, Petitioners do not assert with any specificity what type of immediate medical treatment is required. *See Marshall v. LeBlanc*, 2019 WL 2090844, at *3 (E.D. La. Mar. 6, 2019), *report and recommendation adopted*, 2019 WL 2088557 (E.D. La. May 13, 2019) (denying injunctive relief to a detainee complaining of poor medical care and noting that "[a]t this early stage of the proceedings, such second-guessing is inappropriate, especially where, as here, plaintiff has presented no evidence whatsoever that immediate antiviral treatment is medically necessary in his particular circumstances").

### b. Petitioners have not demonstrated potential harm to them outweighs the harm to the Government if a stay is not granted and have failed to show that granting the stay serves the public interest.

77.    Petitioners' motion for a TRO alleges that "no countervailing interest outweighs Petitioners right to immediate release" and that the Government will suffer no damage by releasing Petitioners from custody.  [Dkt. 1-4 at 11.] Petitioners further claim that any interest that the Government may have in effectuating Petitioners' potential removal does not outweigh the right, under the Constitution and the federal statutes and regulations governing their custody, to a fair and meaningful review of their detention." [Dkt. 1-4 at 14.] Petitioners then allege that "the public interest is served by ensuring government agencies and officials discharge their legal obligations especially where, as here, not doing so results in the continued detention of minor children," and that "[t]he public interest also would be served by allowing the Petitioners, the adult of whom has clearly expressed fear of any of them returning to Honduras, to be released in such a way they can be processed under the immigration laws and provided a real opportunity to apply for asylum." (Dkt. 1-4 at 20.)

78.  The Fifth Circuit has held that these types of generic assertions regarding the hardship caused by removal are insufficient to support injunctive relief. *See generally Chambers v. Mukasey*, 520 F.3d 445, 451 (5th Cir. 2008) (rejecting a motion for a stay of removal where an alien's "arguments with respect to factors (2)–(4) [were] non-unique: she merely lists the various difficulties any alien would face upon removal, asserts that those difficulties outweigh any harm to the government, and baldly asserts that a stay of removal would advance the public interest by promoting justice").

79.  Furthermore, and as noted above, Petitioners are properly detained and subject to final orders of expedited removal. Contrary to Petitioners claims, there is a strong public interest in prompt execution of removal orders. *See Nken v. Holder*, 129 S. Ct. 1749, 1753 (2009) (stating that in the removal context "[t]here is always a public interest in prompt execution of removal orders," because "[t]he continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings [federal law] establish[s], and permits and prolongs a continuing violation of United States law" (brackets and internal quotation marks omitted)); *Rivera-Rosa*, 2019 WL 5191095, at *25 ("Petitioners request that the Court order CBP to release detained aliens on bond or with electronic monitoring after 72 hours of detention, if they cannot be transferred to ICE custody by that time. Such an order would raise genuine security concerns for the public in those communities, and could alter CBP's prioritization of processing detained aliens."); *see also* S. Rep. No. 104-249, at 2, 1996 WL 180026 (explaining that among IIRIRA's primary goals was Congress's desire to "expedit[e] the removal of . . . aliens").

80.  In sum, a balancing of the factors weighs in support of denying Petitioners' request for a TRO.

## CONCLUSION

81.  For these reasons, the Government respectfully request that the Court deny Petitioners'

motion for a TRO.

Respectfully submitted,

RYAN K. PATRICK
United States Attorney

By:     **s/ David L. Guerra**
DAVID L. GUERRA
1701 W. Business 83, Suite 600
McAllen, Texas 78501
(956) 618-8010
(956) 618-8016 (fax)
State Bar No. 08575200
SDTX No. 14435
David.Guerra@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 17, 2020, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system, which sends notice of electronic filing to all record counsel.

s/***David L. Guerra***_____
DAVID L. GUERRA
Assistant United States Attorney